UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61832-CIV-GRAHAM/DUBÉ

ROSEANN VENDITTI,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #17) and the Motion for Summary Judgment filed by the Defendant (D.E. #22) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Roseann Venditti (hereinafter "Venditti" or "Plaintiff").

## I. FACTS

On February 14, 2005, Venditti filed an application for supplemental security income which asserted disability as of September 30, 2003. (R. 79-81).[1] The application was denied initially and on reconsideration. (R. 54-71). An initial hearing was held on March 14, 2006. (R. 541-573). After the ALJ issued an opinion, the case was remanded by the Appeals Council (R. 311-315), and a second

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

hearing was held on November 29, 2007. (R. 574-652).[2] Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 22-38). A request for review filed with the Appeals Council was denied. (R. 11-13).

The Plaintiff, age 51 at the time of the hearing on November 29, 2007, testified that she completed high school and previously worked at a hairdresser where she'd answer phones and help clients. (R. 576-577). Venditti also testified that she worked as a care giver in 2000 for a year and a half but stopped working because she injured herself. (R. 577).

According to the Plaintiff, she did not collect unemployment or workman's compensation. The Plaintiff stated she was making $7.50 an hour but couldn't remember how many days a week she worked. (R. 578). Venditti also worked as a nail technician for three or four months but couldn't perform that job as she was allergic to the chemicals. (R. 578-579). Venditti stated she used a cane by prescription for almost a year. Additionally, the Plaintiff stated she uses two canes to walk because of the pain in her legs and feet. She added that the pain is caused by fibromyalgia and feels like a stabbing pain in her feet, legs and lower back. (R. 579).

Venditti testified she has a driver's license and is insured but has not driven since 2003. The Plaintiff added that her parents, who she currently lives with, pay for the insurance. (R. 580). The Plaintiff stated she cannot drive because of pain and she was not sure why she was still insured. She then stated that she might not be insured. According to the Plaintiff, she lives in a house that is owned by her father and her parents moved in to take care of her. She added that they have lived together since August 2000. (R. 581). Upon further questioning from the ALJ, the Plaintiff stated her father purchased the residence in 2000 but her parents didn't move in with her until 2003.

---

2. At the hearing, the Plaintiff amended her alleged onset date to April 8, 2006. (R. 651).

Venditti testified that in 2000 she was living with her husband in a different house which was foreclosed while her husband was incarcerated. (R. 582).

The Plaintiff testified that she is currently taking Motrin 800, Lexapro, Clonazepam and Lorazepam. (R. 583). She added that a week and a half prior to the hearing Dr. Cardozo prescribed her with sleep medication. (R. 584). Additionally, the Plaintiff stated she quit her last job as a care giver because she was hurt and because the daughter of her patient was beating up her elderly mother and an abuse claim was filed. (R. 587). Venditti attended college for two years, did not finish college, but received a certified nurse's assistant certificate. (R. 588).

According to the Plaintiff, she spends her entire day in bed, does not eat, and has lost 25 pounds as a result. The Plaintiff said her 90 year old father drives her to her doctor appointments. In 2003, the Plaintiff worked as a housekeeper walking pets. (R. 589). Venditti testified that her parents have cared for her since 2003 and that her mother bathes and dresses her. The Plaintiff further testified that she does not know how to use a computer and never goes out to dinner. She again stated that she does not eat or go out. (R. 590).

Venditti testified that she only drinks and does not eat because of stress related to her son going to prison. (R. 591). She further explained that she drinks juice or her mother will grind up meat and mix it with the juice. The Plaintiff also stated she does not exercise and is treated by her primary care physician for the fibromyalgia. Venditti said she only sleeps for a couple of hours because of the stress related to her family. (R. 592). On December 4, 2007, she will undergo professional counseling. According to Venditti, she only watches television for about five minutes before turning it off. The Plaintiff stated she doesn't want anybody in her room and does not want to talk to anybody. (R. 593). The Plaintiff testified she has a cell phone in order for her parents to reach her

3

when they go to the store and to talk to her son in Chicago. (R. 594).

The Plaintiff explained her telephone activities as follows:

> You asked me if I talk. I don't call anybody, Your Honor. But if they call me and if I want to talk to them, yeah. But I don't. I'm always in my room. I don't want to talk to nobody. I don't want to talk to no one. I don't know how to explain it.

(R. 595). The Plaintiff then stated that it would be fair to say that she uses the cell phone from time to time. Venditti added that she doesn't talk to anyone aside from her parents, son, daughter and doctor. (R. 596-597). Additionally, the Plaintiff stated she doesn't have any activities aside from occasionally turning on the television momentarily before having to turn it off because it reminds her of what she used to be. (R. 597).

Venditti stated she has not driven since 2003 when she started having pains. She stated that she is afraid to drive and thinks she stopped driving after she was terminated from her job and the pain got worse. According to the Plaintiff, she woke up one day and suddenly started having pains. She also stated that her pain was not related to an accident. (R. 598). The Plaintiff said she began taking medication for fibromyalgia in 2003 but that the medications did not help.

The Plaintiff stated that she does not do anything around the house and does not prepare meals. Venditti said her father is 89 and her mother is 82 and that both are in good health. (R. 599). The Plaintiff further testified that her parents do everything for her. Her 16 year old daughter lives with them, but spends her time in school and with her friends. The Plaintiff stated that she has not eaten for 6 months and her pain has got worse since 2003. She added that the pain is constant. (R. 600).

Additionally, the Plaintiff stated she has pain in her legs, feet, lower back and hands. She

started getting numbness in her hands four months prior to the hearing. She described the pain as "intolerable" and stated it had been at that level since 2005. (R. 601). Venditti also testified that both knees are "very bad" and she has received injections in both. The Plaintiff stated she can sit and stand for 10-15 minutes but if she leans on a wall the pain is less. (R. 602). The Plaintiff said her mother has been bathing her since 2005 because she can not bend. (R. 603-604). She also stated that she cannot button her shirt when her fingers are numb. According to Venditti, in addition to her other medical conditions, she has problems with her stomach. (R. 604).

The Plaintiff stated she did not know why she hadn't started seeing a psychiatrist sooner and added she told her doctor about her problems related to eating and sleeping. The Plaintiff also saw a cardiologist because she had chest pains which she thought were the result of a heart attack. She was told that the chest pain are a result of anxiety. (R. 605). Venditti testified she stopped smoking three years prior to the hearing. (R. 605-606). The Plaintiff described an anxiety attack as follows:

> Anxiety attack is like having a heart attack and your chest like there's somebody sitting on your chest and you can't breathe. That's what an anxiety attack.

(R. 606). The Plaintiff stated that for 6 months she has had 4 or 5 anxiety attacks a day which are caused by stress and pain. (R. 606-607).

In addition to the Plaintiff's testimony, Dr. Larry Benovitz, a medical expert, testified at the Plaintiff's hearing. Dr. Benovitz made several observations regarding the Plaintiff's medical history. Specifically, he stated that the record demonstrated a history of anxiety and depression with a possibility of histrionic/somatoform type of issues. He added that with no real ongoing treatment history it is difficult to see a full picture of the Plaintiff's condition. The ME opined that based on the medical evidence contained in the record, he did not believe that there was enough evidence to

support that the Plaintiff met or equaled a listing. (R. 613).

Dr. Benovitz added that it is difficult to predict how the Plaintiff would respond to medication and that her symptoms might be ameliorated, at least partially, if she were taking medication. (R. 614). The doctor explained that during a July 26, 2007 examination, reports of "feeling sad all the time, guilt, shame, anxiety, fear of dying, etcetera," were complaints made by the Plaintiff and not the observations of the examining physician. (R. 615). He also stated that with regard to testing performed during the examination, he could interpret the results but could not testify to how the results were determined. (R. 616). Dr. Benovitz testified that while the examination notes reveal that the Plaintiff's depression and/or pain would have some effect on memory and cognition, the degree could not be determined. He further testified that the personality test performed revealed an exaggeration of symptoms but also that there might be memory problems related to depression. The doctor again stated that the degree of the memory problems could not be determined. (R. 618).

The Plaintiff's attorney and Dr. Benovitz had the following colloquy regarding the Plaintiff's difficulties with concentration:

> Q. Now, you're not prepared to say today whether that's marked, extreme, slight, whatever, right? That's the bottom line of what I'm understanding from you?
>
> A. No, I can't say what –
>
> Q. What would help you to be able to do that? I mean, what would you need in a perfect world to be able to say what's –
>
> A. Well, either like we said the neuro-psych testing or to be evaluated over a period of time by a doctor who sees her whatever it is, every two weeks, every month, whatever. So the doctor can get a better feel for how she's functioning.

(R. 621-622). The doctor added that pain if severe enough could impact mood and to some extent

6

cognitive functioning and attention. (R. 622). The ALJ then specifically asked the question whether based on the record, testing and objective evidence the Plaintiff met or equaled 12.04, specifically the B criteria; to which the doctor responded that he could not say the Plaintiff was "marked" in those areas. (R. 627-628). When asked more specifically about the impact on the Plaintiff's activities of daily living, socialization or social functions, and concentration, persistence, and pace, he responded that "based on the record, there isn't. There's not enough data." (R. 628).

Dr. Joseph Rubini, a second medical expert also testified at the hearing. Dr. Rubini testified that based on the medical evidence it was "clear" that the Plaintiff has osteoarthritis of the knees for which she had five injections of joint fluid. (R. 631). He also testified that the evidence did not reveal that any doctor recommended the use of two canes and the recommendation for the use of one cane was sparse. (R. 631-632). Dr. Rubini further testified that the Plaintiff did not meet or equal a listing. With regards to the Plaintiff's testimony at the hearing, Dr. Rubini stated as follows:

> – I can't, when I hear her testimony today and I look at her today, that flies in the face of what my review of the records have shown so I can't say much about today's findings. I haven't examined her and I don't have records on that.

(R. 632). The doctor testified that if the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, she could have a job in which she could sit with the ability to stand whenever she needed to. He added that the Plaintiff could walk for 10 to 15 minutes at a time for a total of one and a half hours during the workday. (R. 633).

The doctor further stated that the Plaintiff could do limited stooping, could occasionally go up stairs, but could never climb a ladder, rope or scaffold. Dr. Rubini testified that the Plaintiff should avoid heights and open machinery; and that the Plaintiff could stand for 15 minutes at a time

for a total of 2 hours a day. (R. 634). Dr. Rubini opined that the Plaintiff did not have any limitation with sitting, reaching or using her hands and fingers. (R. 635). Dr. Rubini did not think the Plaintiff met the criteria for fibromyalgia as she was not examined by a rheumatologist and the record did not have a consistent diagnosis of same by the various treating physicians. (R. 635-636).

The next witness to testify at the Plaintiff's hearing was Dr. Howard Feldman, a vocational expert. Dr. Feldman described the Plaintiff's past relevant work as a home companion, DOT #309.674-014, light, semiskilled, with an SVP of 3; and hostess, DOT #352.667-010, light, semiskilled, with an SVP of 3. (R. 638). The VE testified that there was also some evidence in the record that the Plaintiff previously worked as a receptionist, but the Plaintiff performed the job inline with the duties of a hostess. According to the VE, the Plaintiff's previous jobs had transferable and acquired skills such as oral and written communication skills, brief record keeping skills, and inspection skills. The VE added that because all the Plaintiff's past relevant work were jobs with an SVP of 3, the jobs did not contain a very high level of skills. (R. 638).

The ALJ then posed a hypothetical question to the VE wherein the person would be limited to light exertional activity such as standing and walking for up to 6 hours a day; sit for 6 hours a day; have the ability for unlimited pushing and pulling; occasional limitations and postural limitations. The VE responded as follows:

> Yeah. The only thing that I would note in that, Judge, is who work as a home companion. Again, I gave you the data from the DOT.
>
> ...
>
> However, her description was more, much more physical in nature. It was more or less almost as a nurse's aide, which would be much heavier than in that job. But ordinarily, work as a home companion would not be eliminated and of course, work as a hostess, in

parenthesis, receptionist, would not be eliminated.

(R. 639-640). The ALJ then used the same hypothetical but added that the individual would be limited to simple repetitive tasks. The VE opined that the added limitation would not have an impact on the individual's ability to perform the Plaintiff's past relevant work because the jobs are both "pretty low semiskilled level." The ALJ then posed a third hypothetical to the VE wherein the individual would be limited to exertional limitations in sedentary; able to stand and walk for 2 hours and sit for 6 hours; no limitation for pushing and pulling; and occasional postural limitations. The VE stated the Plaintiff's past relevant work would be precluded because of the sedentary nature. (R. 640).

The VE testified that such a person would be able to perform work as a receptionist, DOT #237.367-038, sedentary, semiskilled, with an SVP of 4 (6,446 jobs locally and over 1 million jobs nationally); telephone solicitation, DOT #299.347-014, sedentary, semiskilled, with an SVP of 3 (3,843 jobs locally and 750,000 jobs nationally). The ALJ then asked an additional hypothetical question with the same limitations but added that the individual would be limited to simple, repetitive tasks. The VE again stated that because the jobs are low semiskilled levels, the jobs would not be affected. (R. 641).

The ALJ's next hypothetical question limited the individual to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for at least 6 hours in an 8-hour workday; walk for a total of one half hour; stand for a total of 2 hours, but with the ability to take breaks and sit down for 10-15 minutes; never crawl; and avoid heights and machinery. The VE testified that such an individual would be able to perform all the jobs that had been discussed. The VE also stated that if an individual could not remain on their feet for 6 hours out of the 8-hour workday the individual would be limited to sedentary work. (R. 641-643). The VE testified that assuming an "entirely credible" Plaintiff, such

a person would not be able to perform the Plaintiff's past relevant work. (R. 643-644).

The VE stated that the Plaintiff performed her past relevant work as a hostess for over a year and the responsibilities of that job included greeting people, taking them from the door to their table; and giving them menus. He also stated that the job included a limited amount of writing. (R. 645). The VE was asked whether the DOT would include oral and written communication in the description of the hostess job to which he responded that it would be insinuated because of the need to deal with the public. (R. 646-647). The VE testified that the manner in which the Plaintiff described her past relevant work was consistent with how the job of hostess of usually performed.(R. 647).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. A review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the severe impairments of mild lumbar spine degenerative disc disease, hypertension and osteoarthritis of the bilateral knees. The ALJ also found that the Plaintiff had the following impairments which were not severe: questionable fibromyalgia with no definite diagnosis and somatoform disorder. The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 28). The ALJ determined that the Plaintiff retained the residual functional capacity as follows:

> ... in an eight hour workday, sit up to six hours, stand/walk up to six

>  hours and lift/carry up to 20 pounds occasionally and ten pounds frequently. The claimant is able to perform work involving occasional climbing, balancing, stooping, kneeling, crouching and crawling.

(R. 29). The ALJ determined that the Plaintiff could perform her past relevant work as a home companion and as a hostess, and thus, was not disabled within the meaning of the Social Security Act. (R. 38).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. <u>See</u>, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. <u>See</u>, <u>Gibson v. Heckler</u>, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from

performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to follow the remand order from the Appeals Council by not reassessing the Plaintiff's past jobs to determine whether any of those jobs met the criteria for past relevant work. In the remand order, the Appeals Council specifically instructed, "Reassess the claimant's past jobs and determine whether any of those jobs meet the criteria for past relevant work." (R. 314). The Plaintiff more specifically contends that her earnings record does not support that she performed her prior jobs at the level of substantial gainful activity from 1998-2000.

The Social Security Regulations have established that, if you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience. 20 C.F.R. § 404.1520 (b).

The threshold to determine whether and individual's income is "substantial is, when average earnings exceed $500 from January 1990 to June 1999; over $700 from July to December 2000; $740 for 2001; $780 for 2002; $800 for 2003; $810 for 2004; and $830 for 2005. 20 C.F.R. § 416.974(b). Earnings reported on income tax returns raise a presumption that the taxpayer was gainfully

employed, but the presumption is rebuttable. Johnson v. Sullivan, 929 F. 2d 596, 598 (11th Cir. 1991). Even work performed on a part time basis may be substantial. Kelley v. Apfel, 185 F. 3d 1211, 1214 (11th Cir. 1999).

In the instant matter, a DISCO DIB Insured Status Report dated November 10, 2005, indicated that the Plaintiff earned $10,609.64 in 1987; $5,867.81 in 2001; $4,026.35 in 2002; and $8,055.25 in 2003. (R. 82-83). Additionally, in a Work History Report completed by the Plaintiff on April 30, 2007, stated that from 1977-2003, she worked as a hostess in a restaurant earning $7.00 per hour while working 6 hours a day for 5 days a week. (R. 344). The Plaintiff also reported working as a nursing assistant from December 2002 through July 2003 and her average monthly income for that period was $1,500 a month. (R. 97). This Court finds that the Plaintiff did engage in substantial gainful activity prior to her on-set date of disability, and thus, the ALJ's determination is without error.

The Plaintiff's second point of contention is that the ALJ erred in relying on the testimony of the vocational expert because the testimony conflicted with the DOT; and the ALJ did not resolve said conflict.

A review of Social Security Ruling 00-4p sets the standards that an ALJ must follow when conflicts exist between vocational expert testimony and the DOT. SSR 00-4p requires the ALJ to perform two tasks: first, determine whether there is a conflict between the VE's testimony and the specific job description contained in the DOT; and second, if such conflict exists the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to

whether or not there is such consistency." SSR 00-4p.

The Plaintiff contends that in the instant matter such a conflict exists. Specifically, the Plaintiff states that the VE, when asked questions by the Plaintiff's attorney regarding the transferability of job skills the VE responded that skills from a job with an SVP of 3 could be transferred to a job with an SVP of 4. The Plaintiff's position is that skills from a lower skilled job cannot be transferred to a job base with a higher skill level. In this case specifically, the Plaintiff refers to skills acquired from the Plaintiff's past relevant work as a hostess to the job of a receptionist which requires a higher skill base.

The Defendant argues that SSR 00-4 is not relevant to the instant matter because vocational expert testimony is not required at Step 4 and the ALJ did not rely on the vocational expert's testimony beyond defining the nature of the Plaintiff's prior work.

With regard to the vocational expert's testimony, the ALJ stated as follows:

> The vocational expert testified that the claimant has past relevant work as a home companion, which was light, semiskilled work, SVP 3 (DOT # 309.674-010); and as a hostess, which was light, semiskilled work, SVP 3 (DOT # 352.667-010). The vocational expert testified that the claimant had transferable skills including oral and written communication skills, record keeping skills and inspection skills.
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.
>
> The vocational expert's testimony was relied upon and accepted in accordance with SSR 00-4p.

(R. 38). The alleged conflict referred to by the Plaintiff is immaterial and any error would be harmless as the ALJ did not find that the Plaintiff could not perform her past relevant work and then rely on the vocational expert testimony at Step 5. In the present matter, there is no alleged conflict between

15

the VE testimony and the DOT definitions. The Plaintiff's past relevant work and this Court find that the Defendant is correct that the ALJ relied on the VE testimony to define the nature of the Plaintiff's prior work.

Additionally, according to Social Security Rulings, three possible tests for determining whether a claimant retains the capacity to perform his or her past relevant work are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc. Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. While "delivery jobs," or "packaging jobs," etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it. Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be "not disabled."
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description. A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61. The VE was posed various questions containing all of the Plaintiff's restrictions, and determined that the Plaintiff could perform her prior relevant work as she performed it and as it is normally performed in the national economy. The ALJ properly concluded that the Plaintiff was "not disabled" in accordance with SSR 82-61 and her decision is supported by the substantial weight of the evidence.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #17) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #22) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this ___8___ day of September, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE